## DivX, LLC v Harman Intl. Indus., Inc.

2025 NY Slip Op 30465(U)

February 3, 2025

Supreme Court, New York County

Docket Number: Index No. 656816/2021

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

------------------------------------------------------------------------------------X

DIVX, LLC

Plaintiff,

- v -

HARMAN INTERNATIONAL INDUSTRIES, INC.,

Defendant.

| | |
|---|---|
| **INDEX NO.** | 656816/2021 |
| **MOTION DATE** | 11/05/2024, 11/05/2024, 11/05/2024, 11/05/2024, 11/05/2024, 11/05/2024, 11/05/2024, 11/06/2024, 11/06/2024, 11/06/2024, 11/06/2024, 11/06/2024, 11/06/2024 |
| **MOTION SEQ. NO.** | 017 018 019 020 021 022 023 024 025 026 027 028 029 |

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 017) 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 596, 625, 626, 687, 688, 689, 690

were read on this motion to/for                                 PRECLUDE                                 .

The following e-filed documents, listed by NYSCEF document number (Motion 018) 528, 529, 530, 531, 532, 533, 597, 613, 627, 653, 654, 655

were read on this motion to/for                                 MISCELLANEOUS                                 .

The following e-filed documents, listed by NYSCEF document number (Motion 019) 534, 535, 536, 537, 538, 539, 598, 614, 628, 651, 652

were read on this motion to/for                                 MISCELLANEOUS                                 .

The following e-filed documents, listed by NYSCEF document number (Motion 020) 540, 541, 542, 543, 599, 615, 629, 685, 686

were read on this motion to/for                                 MISCELLANEOUS                                 .

656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.                    **Page 1 of 22**
 Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029

1 of 22

The following e-filed documents, listed by NYSCEF document number (Motion 021) 544, 545, 546, 547, 548, 600, 616, 630, 656, 657, 658, 659

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 022) 549, 550, 551, 552, 553, 554, 555, 556, 601, 617, 631, 644, 645, 646, 647, 648, 649, 650

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 023) 557, 558, 559, 560, 561, 562, 602, 618, 632, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 024) 563, 564, 565, 566, 567, 603, 619, 633, 679, 680

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 025) 568, 569, 570, 571, 604, 620, 634, 660, 661, 662

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 026) 572, 573, 574, 575, 576, 605, 621, 635, 663, 664, 665

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 027) 577, 578, 579, 580, 606, 622, 636, 681, 682

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 028) 581, 582, 583, 584, 585, 586, 587, 588, 607, 623, 637, 683, 684

were read on this motion to/for                                      MISCELLANEOUS                                      .

The following e-filed documents, listed by NYSCEF document number (Motion 029) 589, 590, 591, 592, 593, 594, 595, 608, 624, 638, 677, 678

were read on this motion to/for                                      MISCELLANEOUS                                      .

Upon the foregoing documents and for the reasons set forth on the record (*tr.* 1.30.25), the

motions (Mtn. Seq. Nos. 017-029) are decided as set forth below.

[* 2]

## THE RELEVANT FACTS AND CIRCUMSTANCES

Reference is made to a prior Decision and Order of this Court, dated July 8, 2024 (the **Prior Decision**; NYSCEF Doc. No. 481) pursuant to which the Court held that (i) whether the license applies to on-car units sold to car manufacturers other than Hyundai depends in large part on what is meant by the words "under a Licensee Brand" and the use of the phrase "and/or" in the revised Section 2.2 of the Consumer Electronics License Agreement for Branded Devices (the **Agreement**; NYSCEF Doc. Nos. 159, 222-226), (ii) the expert report of Dr. Mangione-Smith raises issues of fact as to whether DivX, LLC (**DivX**)'s Intellectual Property Rights (as broadly defined in the Agreement) in "packed B-frame technology" is present in Harman International Industries, Inc. (**Harman**)'s head units, which can play back the CTKs, (iii) whether the in-car units "decode" DivX Files in violation of Section 3.7 of the Agreement depends on whether partial or full playback is required to cause a breach of Section 3.7, and (iv) issues of fact exist as to whether the video portion of DivX Files contain any "DXN intellectual property or [] DXN proprietary features" not contained in the standard MPEG-4 format (in particular, DivX's packed B-frame technology) such that even the mere playback of the video portion of a DivX File may constitute a decoding of DivX proprietary information.

## DISCUSSION

The purpose of an *in limine* motion is prevent the use of "inadmissible, immaterial or prejudicial evidence" at trial (*State v Metz*, 241 AD2d 192, 198 [1st Dept 1998]; *Drago v Tishman Constr. Corp. of N.Y.,* 4 Misc3d 354, 359-60 [Sup Ct, NY Cnty 2004]).

### I.        DivX's Motion *in Limine* (Mtn. Seq. No. 017)

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**           **Page 3 of 22**
Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029

3 of 22

### A. Testimony and Documents as to the Validity of DivX's Patents and Mark Lorne Milhench's Proposed Expert Testimony

DivX argues, among other things, that the Court should exclude all testimony and documents relating to the validity of DivX's patents because while a licensee can challenge a patent's validity as a basis to avoid royalty payments under a patent license, the Agreement at issue is not a patent license.

In their opposition papers, Harman argues that not all DivX technology is "DXN Technology." DXN Technology is limited to certain patent rights in the Deliverables (*i.e.*, the Certification Test Kits [**CTKs**]):

> **DXN Intellectual Property Rights:** all inventions and proprietary rights owned or controlled by DXN, including without limitation all copyrights, copyright registration rights, patents, patent registration rights, business processes, mask works, data rights, trade secrets, know-how, moral rights and specifications, arising or enforceable under U.S, law, the laws of any other jurisdiction, or international treaty regime but excluding all trademark rights and associated goodwill.

> **DXN Technology:** the Deliverables and Intellectual Property Rights in the Deliverables, including any subdecimal upgrades or derivatives thereof, but not including new releases.

(NYSCEF Doc. No. 159 at 1-2). Harman also argues that DivX's European patent is a critical basis for the royalties sought by DivX, as it is the only patent with a claim directed to a media file like those in the CTKs.

As an initial matter, the Court notes that DXN Intellectual Property Rights means "**all inventions and proprietary rights owned or controlled by DXN**" not merely patent rights. In addition, whether DivX had proprietary rights "arising **or** enforceable under US law or the laws of any

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                    **Page 4 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

4 of 22

[* 4]

other jurisdiction or international treaty" presents a legal issue for the Court, not an issue of fact for the jury.

The issue of when DXN had Intellectual Property Rights "arising **or** enforceable under US law or the laws of any other jurisdiction or international treaty" requires additional briefing. For one thing, it is not clear from Harman's proffered expert opinion whether he is opining as to that or whether he is offering a much more limited opinion particularly given that he has testified that he is not an expert in German law and may not have a basis to opine as to DivX's "proprietary rights" given the provisional patent filing in Germany in 2015. In other words, although Harman can introduce evidence that DivX did not have a patent or provisional patent rights (if this is the case as a legal matter) or expert testimony within the scope of the expert's expertise, what they can not do is mislead the jury either with an incorrect or incomplete statement of DivX's "proprietary rights…arising **or** enforceable under U.S. law, the laws of any other jurisdiction or international treaty."

Thus, and to the extent that Harman intends to proffer a legal opinion at trial that DivX does not have "proprietary rights…arising **or** enforceable under U.S. law, the laws of any other jurisdiction or international treaty," Harman may file on NYSCEF an up to three-page letter brief as to (I) whether (a) its proffered expert who testified at his deposition that he is not an expert in German law can offer an opinion on whether DivX had "proprietary rights arising **or** enforceable under U.S. law, the laws of any other jurisdiction or international treaty" and if so when they had such rights given the 2015 provisional patent filing in Germany and how "proprietary rights…arising **or** enforceable under U.S. law, the laws of any other jurisdiction or international

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                    **Page 5 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

5 of 22

treaty" are challenged under the laws of the United Kingdom and under the laws of the United States and (b) the basis for such opinion, and (II) (a) a more limited opinion that it proposes that its expert is qualified to propound (if that is the case) and the basis for such opinion (*i.e.*, taking into account U.S. law and foreign law and how patent rights are challenged under U.S. law and foreign law)[1] and (b) an appropriate potential jury instruction for the Court to consider in ensuring that the jury understands the opinion and its limits and is not confused or misled by the expert's proffered opinion.  The letter shall be served and filed no later than February 14, 2025.

DivX may offer a rebuttal expert report in response. The rebuttal expert report shall be completed within 60 days of this Decision and Order and the rebuttal expert shall appear at a deposition within two weeks following the service of such report.  Following the deposition, the parties shall meet and confer.  To the extent that the legal issue remains unresolved, the parties shall email Part 53 (sfc-part53@nycourts.gov) to arrange a conference following which the Court shall issue a supplemental order addressing the legal issue.

### B. DivX is Not Entitled to Exclusion of Documents Relating to Negotiations Between DivX and Cinemo GmbH

DivX argues that the Court should exclude all testimony and documents relating to DivX's ultimately unsuccessful licensing negotiations in early 2014 and between late 2015 and 2016 with Cinemo GmbH (**Cinemo**), a German company which provides software in Harman's products rendering the products capable of decoding DivX Files.  DivX claims that (i) Harman remains responsible for license fees irrespective of whether Cinemo has a license from DivX,

---

[1] If a patent is presumptively valid under U.S. law unless challenged in a particular manner, if this was not done, it would be improper to suggest to the fact finder that DivX does not have DXN Intellectual Property Rights before January 22, 2020 if Harman knows that they did.

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                    **Page 6 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

6 of 22

[* 6]

and (ii) references to failed negotiations prejudicially imply that DivX did not take necessary steps to protect its technology from Cinemo's misuse.

As discussed, although true that Harman remains responsible under the Agreement to pay license fees it owes (if any) and Harman may not imply that the negotiations were unsuccessful based on any failure of DivX, the negotiations with Cinemo are admissible for the purpose of demonstrating DivX's knowledge that Harman's products use Cinemo software in implementing the MPEG-4 standard to play any video compliant with that standard, including the video portion of DivX Files, which DivX designed to be backward-compatible with MPEG-4 to the exclusion of any DXN Intellectual Property Rights.

Per the discussion at oral argument and inasmuch as DivX does not dispute this fact, to avoid any improper understanding, the parties are to provide the Court with a proposed stipulation of fact to be read to the Court to the fact finder at trial.  If the parties are unable to agree upon a stipulation of fact on this point, Harman may introduce into evidence an agreed-upon redacted document showing the relevant portions relating to Cinemo technology and the MPEG-4 standard.

### C. Exclusion of Testimony and Documents Relating to Other Negotiations and Agreements Between DivX and Third Parties is Improper

DivX argues that the Court should exclude as irrelevant all references and testimony relating to the definitions of "Third Party In-Car Brand" in DivX's licensing agreements with third parties from 2007 to 2011, including Mitsubishi (DTX227 and DTX228), Audiovox (DTX229), Denso (DTX230), Clarion (DTX231), Fujitsu (DTX232), and Visteon (DTX233).  DivX contends that the third-party agreements contain confidential information of DivX's customers, and the

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

**Page 7 of 22**

[* 7]

7 of 22

contracting parties' interest in maintaining confidential terms is not outweighed by the minimal probative value of their disclosure in open court. They are not right.

Any sensitive information can be addressed by agreed upon redaction. The Agreement in this case is ambiguous as to whether infotainment systems sold to automakers other than Hyundai are outside the scope of the license. Provided that a proper foundation is established (*see Herman v Seaworld Parks & Entm't, Inc.*, 2016 WL 3746421 (MD Fla July 13, 2016]; *United States v Kellogg Brown & Root Servs., Inc.*, 284 FRD 22 [DDC 2012]), Harman can introduce these agreements as evidence of what the parties meant by the term "Third Party In-Car Brand." This will require a foundation that changes were made to the form agreement in a similar manner and for similar purpose.

### D. Testimony and Evidence that DivX is Not the Original DivX or as to Fortress Investment Group, or Attempts at Smearing DivX as a Litigation Funder, are Inadmissible

DivX owns the assets of the original company that entered the Agreement at issue with Harman and has succeeded to its rights. Harman is not permitted to introduce evidence about Fortress Investment Group (**Fortress**) as an owner of DivX or Fortress's ownership by the Mubadala Investment Company, a state-owned global investment firm that acts as one of the sovereign wealth funds of the government of Abu Dhabi. The ownership of DivX is not an issue in this case. Nor is Harman permitted to use such ownership or any purported change in strategy to disparage DivX as a serial litigant, "troll," or a "litigation shop." All such references are irrelevant and improper. None of this has anything to do with this case.

**656816/2021 DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.** **Page 8 of 22**
**Motion No. 017 018 019 020 021 022 023 024 025 026 027 028 029**

8 of 22

## II.      Harman's Motion to Exclude Todd Schoettelkotte's Testimony Regarding Liquidated Damages Under Section 3.3 is Denied (Mtn. Seq. No. 018)

Harman argues that the Court should exclude the testimony of DivX's damages expert witness, Mr. Schoettelkotte, regarding the "penalty" royalty rate doubling under Section 3.3 of the Agreement because, in sum and substance, (i) the Court has already addressed the penalty rate and determined it is unenforceable, (ii) Section 3.3 requires Harman to submit the alleged Licensee Products for certification before the penalty rate is available, and (iii) the penalty does not apply to alleged breaches of Section 3.7, which do not involve Licensee Products.

In opposition, DivX argues, in sum and substance, that (i) Section 3.3 does not require a condition precedent, but rather, merely states that DivX may at its discretion terminate the Agreement or require Harman to submit Licensee Products for certification, (ii) Section 3.3 is not an unenforceable penalty under California law, and (iii) Section 3.3 does, in fact, apply to a Section 3.7 violation.

As an initial matter, Harman previously moved for summary judgment to have this Court hold that Section 5.7 of the Agreement is not enforceable.  They did not however move to have the Court hold that Section 3.3 is unenforceable.  Nothing prevented them from doing so. This is improper for consideration on a motion *in limine*. As such, it is denied.

For completeness the Court notes that the basis on which the Court held that Section 5.7 was unenforceable was that under California law, a liquidated damages clause in a non-consumer contract will be found invalid "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach" (*Ridgley v Topa*

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**            **Page 9 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

9 of 22

[* 9]

*Thrift & Loan Ass'n*, 17 Cal 4th 970, 977 [1998]). As the Court previously explained, in Section 5.7, the parties negotiated for DivX to have the right to audit once per year to ensure that DivX was not underpaid. As a result, the Court held that inasmuch as the costs and fees associated with the audit and any underpayments were addressed by the Agreement, the additional penalty bore no relationship to any actual damages that the parties could have anticipated that flowed from the breach.

Section 3.3 is a different provision. It provides that if Harman fails to obtain certification for a Licensee Product prior to distribution, it is a material breach of the Agreement, and that DivX may at its discretion either (i) terminate the Agreement or (ii) require Harman to pay the penalty rate. The provision goes on to explain that Licensee Products shall only be marketed and promised for the DivX Certification Profile for which they have been DivX Certified. In other words, breach of this provision suggests damages other than a mere missed royalty payment. As such, this penalty provision appears to be valid under California law. Thus, the motion is denied.

### III. Harman's Motion to Exclude Mr. Schoettelkotte's Testimony Regarding the Measure of Damages for Alleged Breaches of Section 3.7 is Denied (Mtn. Seq. No. 019)

Harman argues that the Court should exclude the testimony of Mr. Schoettelkotte regarding the measure of damages for Harman's alleged breaches of Section 3.7 of the Agreement because, among other things, in Harman's view, Mr. Schoettelkotte's expert report fails to adequately set forth the basis upon which he "used" a $1.00 per-unit royalty as reasonable damages for the alleged Section 3.7 breach and royalties are not actual damages. Simply put, Harman is not correct.

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**          **Page 10 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

10 of 22

[* 10]

Mr. Schoettelkotte like any expert is permitted to make assumptions as it relates to his opinion on damages. He has used the parties' Agreement as to the royalty rate as an assumption as to what the parties expected DivX's actual damages to be. To the extent that Harman seeks to challenge Mr. Schoettelkotte's assumption, he will be subject to cross examination and there simply is no surprise. As such, the motion is denied.

**IV.     Harman's Motion to Exclude Fact Witness Testimony Beyond Personal Knowledge is Denied (Mtn. Seq. No. 020)**

Harman argues that the Court should exclude testimony by several fact witnesses, including DivX's current CEO and General Counsel, Noel Egnatios, DivX's current Vice President of Licensing Compliance, Brian Satterley, and DivX's former General Counsel, Dan Schatz, regarding an array of subjects for which they have no personal knowledge in an attempt to support DivX's claim that Harman breached the Agreement.

In their opposition papers, DivX argues that Harman's motion is premature and lacks a proper basis for exclusion because Harman is seeking to preemptively prevent witnesses from being able to discuss exhibits that are harmful to Harman's case but are in and of themselves admissible at trial.

Harman is not entitled to a blanket order from the Court that fact witnesses should only be entitled to testify as to matters for which they have personal knowledge. The relevant inquiry is whether a proper foundation has been laid for the testimony. Among other things, and with the proper foundation, business records are admissible and witnesses are permitted to testify as to

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**          **Page 11 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

11 of 22

[* 11]

their companies' business records.  For clarity, if appropriate, Harman may object to any testimony or evidence that is not admissible under New York law. Harman may not, however, limit testimony in the manner in which it seeks to do here.  As such, the motion is denied.

**V.  Harman's Motion to Limit Evidence Regarding DivX Technology and DXN Intellectual Property Rights is Denied (Mtn. Seq. No. 021)**

Harman argues that the Court should exclude testimony and references regarding DivX technology or DXN Intellectual Property Rights that is in the public domain due to patent expiration because, in sum and substance, (i) the Agreement says nothing about what happens if Harman uses DivX technology or DXN Intellectual Property Rights that are not in the Deliverables, and (ii) Harman has an absolute right to use any DivX patented intellectual property that is not in the Deliverables pursuant to the license between DivX and Samsung (the **Samsung Agreement**), for which rights DivX has already been paid by Samsung. They are not correct.

Harman is not entitled to exclude any evidence of DXN Intellectual Property Rights that could form the basis upon which DivX could recover.  As discussed above, DXN Intellectual Property Rights are not limited to patents or patented inventions.  The definition is much broader than that.  In addition, Dr. William Mangione-Smith indicates in his expert report that DivX's innovations were included in DivX decoders up to version 6, such that references to products supporting DivX up to version 6 are evidence of incorporation of DXN Intellectual Property Rights, and evidence regarding DivX packaged B-frame technology is also at the heart of DivX's claims in this case.  Lastly, the Court notes that the Court already addressed Harman's argument

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**               **Page 12 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

12 of 22

based on the Samsung Agreement and rejected it for the reasons set forth in the Prior Decision. As such, the motion is denied.

## VI. Harman's Motion to Exclude Undisclosed Opinions and Documents of Dr. William Mangione-Smith is Denied (Mtn. Seq. No. 022)

Harman argues that the Court should exclude the certain opinions of Dr. Mangione-Smith that Harman argues were not disclosed in his expert report and that they only learned of during his deposition and in his post discovery affidavit which they argue veer wildly from his original disclosed opinions and are based solely on anonymous blog posts and Wikipedia articles that are inadmissible hearsay. The argument fails.

The opinions that Harman are concerned about were in fact disclosed in his expert report. He discussed MPEG-4 Part 2 decoders and packaged B frames and he was deposed about his opinions at length. The opinions are not based on "Wikipedia" or blogs. Those references appear to be included merely to show that people have complained about exactly that which he has said would in fact occur – disruption. They are not relied upon for the truth of the matter asserted in forming his opinion.

To be clear, expert testimony based on scientific principles or procedures is admissible only after a principle or procedure has "gained general acceptance" in its specified field (*People v Wesley*, 83 NY2d 417, 422 [1994] [citing to *Frye v US*, 293 F 1013 [App DC 1923]). But as discussed above, Dr. Mangione-Smith's opinion is not based on the blogs. It's based on his considered analysis of the technology all of which was disclosed and all of which he was deposed about and

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**          **Page 13 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

13 of 22

his proffered testimony is within the scope of his field of expertise. His affidavit merely amplifies and clarifies the opinions he has given. Nothing more. The fact that Harman wants to suggest an inconsistency is for cross-examination. Thus, the motion is denied.

## VII.   Harman's Motion to Exclude Evidence Regarding Products That Did Not Play Back CTK or DivX Files is Denied (Mtn. Seq. No. 023)

Harman argues that the Court should exclude evidence regarding products that did not play back video or any other portions of any DivX Files or CTK files during DivX's product testing on the basis that DivX's own evidence conclusively establishes that such products do not pass DivX's test criteria for incorporating "DXN Technology" or "decoding DivX Files." The argument fails.

In its opposition papers, DivX argues that it has adduced voluminous documentary and deposition testimony evidence to support its position that eight Harman programs incorporate DXN Technology and decode DivX Files, including Harman's own internal documents showing that its products support DivX playback.

Harman's internal documents are evidence that Harman's products were capable of playing back the DivX Files. To the extent that Harman disagrees with what those documents mean, or they otherwise indicate that they have contrary evidence or that their expert disagrees with what the documents suggest, Harman may cross-examine witnesses and/or put into evidence their own substantive evidence. They may not however prevent DivX from the introduction of evidence which they say they can factually controvert or prevent the introduction of certain evidence based on the fact that the documents do not explicitly use the words "B-frames" on the basis that because the documents do not use those words they could not be referring to or otherwise apply

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

**Page 14 of 22**

14 of 22

to B-frames or packed B-frames.  This is all for the witnesses to explain at trial.  Thus, the motion is denied.

### VIII. Harman's Motion to Exclude Evidence Regarding Alleged Licensee Products Before Issuance of DivX's Patent on Files with Packed B-Frames is Denied (Mtn. Seq. No. 024)

Harman argues that the Court should exclude evidence regarding alleged Licensee Products sales prior to January 22, 2020, which was when the only patent that DivX contends to be embodied by the Deliverables was issued.  Harman contends that, before January 22, 2020, none of Harman's products could have incorporated any asserted "DXN Technology" as defined under the Agreement and would not meet the requirements of "Licensee Products," and thus, DivX has no evidence that any of Harman's products sold before January 22, 2020 were royalty-bearing Licensee Products. The argument fails.

As discussed above, the definition of DXN Intellectual Property Rights is not limited to patents and Harman has not established as a matter of law that DivX did not have DXN Intellectual Property Rights prior to January 22, 2020.  In addition, DivX's Licensee Product basis claims are not predicated merely on patent breach as of the date of the patents' issuance (they had provision rights and other proprietary rights before that) and the claims are predicated on Harman's incorporation of DXN Intellectual Property Rights in DivX's CTKs, and they additionally have claims based on violations of Section 3.7 of the Agreement which this motion would improperly seek to exclude. Thus, the motion is denied.

### IX. Harman's Motion to Exclude Opinions Regarding Products Not Shown to Physically Include DivX Products is Denied (Mtn. Seq. No. 025)

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

**Page 15 of 22**

15 of 22

Harman argues that the Court should exclude evidence regarding Harman products that DivX contends are "Licensee Products" where DivX has no evidence showing that the Harman product physically includes a DivX Product, as defined in the Samsung Agreement, by including a DivX CTK (the Deliverable under the Agreement). Harman contends that the Court's decision to deny its motion for summary judgment was based on DivX's representation that DivX is only seeking royalties from DivX Products sold by Harman, not for Harman products. The argument fails.

DivX's position has always been that Harman breached the Agreement both because Harman's licensing products incorporate DivX's Intellectual Property Rights and because Harman breached Section 3.7 of the Agreement. The argument was never predicated on the assumption that CTK files are physically present. As discussed in the Prior Decision, the Court rejected Harman's argument that the Samsung Agreement precluded DivX's contractual claims because among other things: (i) the position is irreconcilably at odds with the Samsung Agreement's carve-out provision to preserve contractual claims relating to licensing agreements and to prohibit the use of the Samsung Agreement as a defense to any such claims, (ii) the Samsung Agreement explicitly provides that DivX's CTKs are "DivX Products," and (iii) if the Samsung Agreement was intended to terminate DivX's ability to collect on the Agreement, DivX would have simply terminated the Agreement and other similarly affected licensing agreements (NYSCEF Doc. No. 481 at 16-17). Thus, the motion is denied.

### X.  Harman's Motion to Exclude Evidence Regarding Software or Software Development Kits is Denied (Mtn. Seq. No. 026)

Harman argues that the Court should exclude all testimony and purported evidence alleging that Harman received Software Development Kits (**SDKs**) and software related to such SDKs from

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                    **Page 16 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

16 of 22

DivX because DivX is relying on an amendment to a 2006 agreement that has expired in order to speculate that DivX's SDKs might be in Harman's products (PEX010). The argument fails.

Ms. Egnatios, DivX's CEO and corporate designee (and potentially other DivX employees) is competent to testify that DivX's business records reveal that Harman's communications to DivX which included software, source code, and SDKs, provide evidence relevant to its claim that Section 3.7 of the Agreement was breached, which does not rely on the definition of Licensee Product or the incorporation of DXN Intellectual Property Rights in the CTKs. Thus, the motion is denied.

**XI.    Harman's Motion to Exclude Mr. Schoettelkotte's Testimony Regarding Contractual Interest for Alleged Breaches of Section 3.7 is Granted to the Extent Set Forth Below (Mtn. Seq. No. 027)**

Harman argues that the Court should exclude testimony by Mr. Schoettelkotte regarding contractual interest, as well as statutory interest before December 6, 2021, for Harman's alleged breaches of Section 3.7 of the Agreement. Harman contends that the interest clause of Section 5.5 clearly does not apply to reasonable royalty damages for alleged breaches of Section 3.7 and, as such, (i) interest is not due for devices that decode DivX Files under the Agreement, and (ii) Mr. Schoettelkotte has not laid any foundation for his opinion that Harman would have incurred late payment interest for such devices under a hypothetical license.

Section 5.5 of the Agreement provides:

> 5.5    **Payment Details.** All amounts due under this Agreement are exclusive of any tariffs, duties or taxes imposed or levied, and all such tariffs, duties or taxes, with the exception of income taxes accrued by DXN, are the sole responsibility of Licensee. All payments shall be made in United States Dollars in immediately

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                    **Page 17 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

17 of 22

available funds. DXN may, in its sole discretion, charge Licensee interest for late payments at the lesser of one and one half percent (1 ½%) per month or the highest rate permitted by applicable law.

(NYSCEF Doc. No. 159 at 5). This by its terms is a payment provision and permits DXN to charge interest on late payments.

Section 3.7 by contrast does not call for payment. It is a provision which prohibits certain conduct and contemplates damages not payment:

> 3.7 To prevent damage to DXN's trademarks and goodwill as a result of the inconsistent, incomplete or non-playback of DivX Files by devices claiming DivX playback, compatibility or support, Licensee shall not manufacture, enable, use, distribute, market or sell devices that encode or decode DivX Files unless such devices are DivX Certified in accordance with this Agreement

(*id.* at 3).

Thus, although arguably this should have been brought as part of the motion for summary judgment, evidence of application of Section 5.5's interest provision to Section 3.7 breaches is not appropriate. It is also not for the jury to decide what prejudgment interest would be appropriate in the event of a breach. This would be addressed in any post-trial judgment and any briefing the Court would then deem appropriate to address the issue. However, the expert is entitled to make assumptions in his testimony to the jury and if necessary, the Court shall instruct the jury what if anything is not for their consideration.

## XII. Harman's Motion to Exclude Evidence and Statements Suggesting DivX was the Original Party to the Agreement is Denied (Mtn. Seq. No. 028)

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

As discussed above, DivX has acquired the assets of the original DivX entity. The ownership structure and whether this DivX is the entity that invented technology or bought it from another company is simply not relevant to any issue in this case. As discussed above, Harman is not permitted to explore DivX's ownership for the purpose of smearing it as a litigation funder and prejudicing its rights in this case with irrelevant information that has no probative value whatsoever. Accordingly, the motion is denied and as set forth above, Harman is not permitted to smear DivX without purpose.

**XIII. Harman's Motion to Exclude Evidence Regarding the Audit is Denied (Mtn. Seq. No. 029)**

Harman argues that the Court should exclude evidence regarding the partial audit of Harman commissioned by DivX in advance of filing this action because (i) the audit was never completed, and the auditor only provided preliminary findings on alleged improper uses of DivX Trademarks, (ii) DivX has abandoned the theory that any of Harman's products are "Licensee Products" because Harman uses DivX Trademarks, and (iii) neither of DivX's experts rely on the audit at all.

In their opposition papers, DivX argues that evidence obtained during the audit, particularly Harman's internal communications admitting that its products incorporate DXN Technology and decode DivX, is relevant to demonstrate that (i) Harman did in fact breach the Agreement by failing to report royalty-bearing Licensee Products, (ii) Harman sold uncertified products that decode DivX Files in breach of Section 3.7, and (iii) Harman did not cooperate with the audit in breach of Section 5.7.

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**          **Page 19 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

19 of 22

Harman is not entitled to the exclusion of the partial audit evidence which DivX indicates relied on Harman's own internal communications for its compilation. The fact that it was not concluded does not mandate its inadmissibility. Indeed, DivX indicates that the audit was not completed because it was Harman who refused to participate in the audit's completion. In any event, the fact that Harman disagrees with what the audit purports to show is a matter to be addressed through cross-examination and introduction of Harman's own substantive evidence rather than a basis for exclusion. As such, the motion is denied.

The Court has considered the parties' remaining arguments and finds them unavailing.

Accordingly, it is hereby

ORDERED that DivX's motion *in limine* (Mtn. Seq. No. 017) is GRANTED solely to the extent set forth herein; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 018) to exclude Mr. Schoettelkotte's testimony regarding liquidated damages under Section 3.3 is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 019) to exclude Mr. Schoettelkotte's testimony regarding the measure of damages for alleged breaches of Section 3.7 is DENIED; and it is further

656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.                    Page 20 of 22
Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029

20 of 22

ORDERED that Harman's motion (Mtn. Seq. No. 020) to exclude fact witness testimony beyond personal knowledge is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 021) to limit evidence regarding DivX Technology and DXN Intellectual Property Rights is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 022) to exclude undisclosed opinions and documents of Dr. Mangione-Smith is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 023) to exclude evidence regarding products that did not play back CTK or DivX Files is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 024) to exclude evidence regarding alleged licensee products before issuance of DivX's patent on files with packed B-frames is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 025) to exclude opinions regarding products not shown to include DivX products is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 026) to exclude evidence regarding software or software development kits is DENIED; and it is further

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

**Page 21 of 22**

21 of 22

ORDERED that Harman's motion (Mtn. Seq. No. 027) exclude Mr. Schoettelkotte's testimony regarding contractual interest for alleged breaches of Section 3.7 is GRANTED solely to the extent set forth herein; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 028) to exclude evidence and statements referring to DivX as the original DivX entity is DENIED; and it is further

ORDERED that Harman's motion (Mtn. Seq. No. 029) to exclude evidence regarding the audit is DENIED.

20250203153121AD0RR0KF70B1AFC356D4CFE8F7BDA69A1690FA1

**2/3/2025**
**DATE**

**ANDREW BORROK, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**656816/2021   DIVX, LLC vs. HARTMAN INTERNATIONAL INDUSTRIES, INC.**                                    **Page 22 of 22**
**Motion No.  017 018 019 020 021 022 023 024 025 026 027 028 029**

22 of 22